**UNITED STATES ex rel. MONAGHAN v. BURKE, Warden.**

**No. 10582.**

United States Court of Appeals, Third Circuit.

Submitted March 17, 1952.

Decided April 30, 1952.

Writ of Certiorari Denied June 9, 1952.

See 72 S.Ct. 1083.

786

Appellant, pro se.

Richardson Dilworth, Dist. Atty., Michael vonMoschzisker, 1st Asst. Dist. Atty., Samuel Dash, Asst. Dist. Atty., all of Philadelphia, Pa., for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

The relator complains of the refusal of the district court to issue a writ of habeas corpus. He alleges that on March 31, 1930, he entered a plea of *nolo contendere* to the charges of "assault and battery—being armed with an offensive weapon, and carrying concealed deadly weapons," and was sentenced to serve six to fifteen years [1] in the Eastern Penitentiary of Pennsylvania. If these allegations are true, it is clear that the sentence was excessive and that relator has been unlawfully detained.

We are satisfied that relator has exhausted his state remedies. The record discloses that in January, 1949, the relator filed a petition for a writ of habeas corpus in the Court of Oyer and Terminer and General Jail Delivery of Philadelphia County. On February 16, 1949, an order was entered by Judge Kun refusing the writ and an opinion was filed the same day. Relator's subsequent motion in the Superior Court for leave to appeal to that court *in forma pauperis* was refused on March 28, 1949, following which relator's successive petitions to the Pennsylvania Supreme Court and the Supreme Court of the United States were denied.[2]

On July 29, 1949, relator next filed a petition for a writ of habeas corpus in the Court of Common Pleas of Montgomery County. Judge Knight awarded the writ and a full hearing was held. On Septem-

---

1. After serving seven years and one day, relator was paroled, and five years later was recommitted for violation of his parole, receiving no credit for the time out on parole. He was again paroled in 1943 after serving about one year and eight months. In 1946, relator was convicted on three bills of indictment of attempted burglary, carrying concealed deadly weapons on the person, carrying firearms in a motor vehicle without a license, and unlawful possession of burglar tools. He was sentenced to two years on the first bill, two years on the second bill, and one and a half to three years on the third, the sentences to be served consecutively. (The sentences were subsequently modified. See Commonwealth ex rel. Monaghan v. Burke, 1951, 169 Pa.Super. 256, 82 A.2d 337.) The sentences were not to begin, however, until relator had served the unexpired balance of the 1930 sentence, and relator was again given no credit for the time out on parole.

On March 15, 1950, relator was paroled and commenced serving the sentences imposed in 1946. This proceeding is not moot, for if the 1930 sentence was in fact excessive, relator would be entitled to credit against the unexpired portion of the 1946 sentences the time served since 1946 on the illegal sentence. Commonwealth ex rel. Thor v. Ashe, 1940, 138 Pa.Super. 222, 228, 11 A.2d 173, 175–176.

2. Monaghan v. Burke, Warden, 1949, 338 U.S. 888, 70 S.Ct. 184, 94 L.Ed. 545.

ber 27, 1949, that court handed down an opinion and entered an order dismissing the writ. With the aid of court-appointed counsel, relator appealed to the Superior Court of Pennsylvania which affirmed the order below. Commonwealth ex rel. Monaghan v. Burke, 1950, 167 Pa.Super. 417, 74 A.2d 802. Relator's petition to the Supreme Court of Pennsylvania for an allowance of appeal and his subsequent petition to the Supreme Court of the United States for a writ of certiorari [3] were both denied.

On July 24, 1951, relator commenced the present action by a petition for a writ of habeas corpus in the District Court for the Eastern District of Pennsylvania. An order to show cause was entered and a hearing held before Judge Grim, following which the petition was denied. A certificate of probable cause was granted by that court and this appeal followed.

The papers and records with respect to relator's conviction in 1930 and subsequent commitment to the penitentiary are replete with confusion. It is indeed to be regretted that the papers on which a man's liberty depends should be so inaccurate and inconsistent. Relator's commitment papers state that he was convicted of "robbery, being armed with an offensive weapon." The docket entries maintained by the Clerk of the Court of Quarter Sessions however, state that defendant was charged with "assault and battery with an offensive weapon," and are thus in conformance with relator's own testimony before the district court.

The Bill of Indictment (No. 1212) presents still a third version. Appellant and his co-defendant are charged with:

1. Assault, being armed with an offensive weapon with intent to rob.

2. Attempted armed robbery.

3. Attempted robbery and at the commission thereof, striking, beating and illusing.

This document has endorsed on its cover over the signature of Judge Horace Stern the following:
"3/25/30

The Defendants being arraigned, plead and stand mute. Dist. Atty. Sim et issue. By direction of the Court plea of not guilty entered.
3/31/30

Defendants withdraw their pleas of Not Guilty. Plead *nolo contendere* and adjudged guilty both. And sentence as to Monaghan to not less than six years, nor more than fifteen years E. P. As to Steelman to not less than five years, nor more than ten years E. P.

By the Court<br>/s/ Horace Stern J." [4]

In the hearing before the district court, the relator testified that he had pleaded *nolo contendere* on Bill of Indictment No. 1212 to "assault and battery, being armed with an offensive weapon." To corroborate this testimony, relator introduced a report made in 1932 by an investigator for the Board of Pardons. This report is in accord with the relator's recollection and with the docket entries. Appearing before the district court, the investigator identified the report in evidence as the one he had made. We note that it is highly unlikely that the investigator made an exhaustive check, for

---

3. Monaghan v. Burke, 1951, 340 U.S. 914, 71 S.Ct. 286, 95 L.Ed. 661.

4. A fourth inconsistency should be noted. There appears to have been originally printed on the cover of the indictment five counts. Two have been stricken out and inked changes have been made in two of the others. With changes, they read as follows:
 "1st count, Assault.—Being armed with an offensive weapon with an attempt to rob.
 "2nd count, Robbery.—Being armed with an offensive weapon.
 "3rd count, Attempted Robbery.—And

at commission thereof, beating, striking, and ill-using."
 It appears that an attempt was made to conform the printed counts on the cover of the indictment with those in the body. This attempt was unsuccessful, for there are discrepancies between the body and the cover in both counts one and two. The Commonwealth admits the existence of these errors on the cover of the indictment and does not contend that relator was convicted of "robbery—being armed with an offensive weapon" under count two, but only "attempted robbery—being armed with an offensive weapon."

he apparently failed even to look at the Bill of Indictment. It is the most logical inference that the investigator consulted only the docket entries and that these provided the basis for his report. Relator contends that notes of testimony were taken, which would corroborate his testimony. If such ever existed, it is clear that they are no longer in existence, and it is hardly our province to engage in idle speculation as to what those notes might reveal.

 The Supreme Court has set forth the rule that a writ of habeas corpus searches the record back of the commitment. The writ places "a duty on the court to explore the foundations, and pronounce them false or true." Hill v. U. S. ex rel. Wampler, 1936, 298 U.S. 460, 467, 56 S.Ct. 760, 763, 80 L.Ed. 1283. The Commonwealth admits, however, that the statement in the commitment is erroneous. If appellant pleaded guilty to the counts set forth in the body of the indictment, then the sentence was perfectly lawful.[5] If, however, the docket entries are correct, appellant's sentence was excessive under Pennsylvania law and he has been unlawfully detained. Our problem then is the narrow one of what constitutes the record of this proceeding. No Pennsylvania case apparently answers that question squarely. We are convinced, however, that the Bill of Indictment with its endorsements is the primary record in the 1930 proceeding. The arraignment, the plea, the judgment, and the sentence are all endorsed on the cover of the indictment and subscribed to by the trial judge, thus comprising a complete record of the proceeding. The docket entries are only a secondary record, for the endorsements of the indictment are later transcribed on the docket. It is clear that the district court was of the opinion that the strong presumption in favor of regularity and accuracy of the record had not been overcome. See Commonwealth ex rel. Spencer v. Ashe, 1950, 364 Pa. 442, 444, 71 A.2d 799, 800. The docket entries and the recollection of the appellant raised an issue

of fact which the court resolved against him. The very fact that there is no offense in Pennsylvania known as "assault and battery, being armed with an offensive weapon" adds strong reinforcement to this conclusion.

The judgment of the district court will be affirmed.

---

5. The first count alone allows the imposition of a maximum sentence of 20 years. Act of April 18, 1919, P.L. 61, § 1. See 18 Purdon's Pa.Stat.Annot. § 4705, which codifies the substantially similar language of the Act of June 24, 1939, P.L. 872, § 705.